[Cite as *State ex rel. Lawson v. Indus. Comm.*, 2014-Ohio-2784.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Cheryl L. Lawson, | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-834 |
| | : | |
| Industrial Commission of Ohio and | | (REGULAR CALENDAR) |
| Allen Metropolitan Housing Authority, | : | |
| | | |
| Respondents. | : | |

D E C I S I O N

Rendered on June 26, 2014

*Larrimer and Larrimer,* and *Thomas L. Reitz*, for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

CONNOR, J.

{¶ 1} Relator, Cheryl L. Lawson, has filed this original action seeking a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's request that the commission exercise its continuing jurisdiction, and to order the commission to exercise its continuing jurisdiction.

{¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued a decision, which includes findings of fact and conclusions of law and is appended to this decision. The magistrate concluded that, because relator did not timely appeal the May 4, 2012 order of the Bureau of Workers' Compensation ("BWC") denying relator's application to participate in the BWC fund, relator was not entitled to the requested writ of mandamus

as she had an adequate remedy in the ordinary course of the law. *See State ex rel. Boskovic Gen. Contrs. v. Indus. Comm.*, 10th Dist. No. 09AP-711, 2010-Ohio-2557, ¶ 6 (noting that "[a] failure to pursue an adequate administrative remedy bars mandamus relief"). Despite that finding, the magistrate also addressed relator's argument that the commission abused its discretion when it refused to exercise its continuing jurisdiction, and concluded that the commission did not abuse its discretion. Accordingly, the magistrate recommended that this court deny the requested writ.

{¶ 3} No objections to the magistrate's decision have been filed. We have conducted an independent review of the magistrate's decision.

{¶ 4} Finding no error in the magistrate's findings of fact, we adopt the magistrate's findings of fact as our own. Finding no error in the magistrate's conclusion that relator was not entitled to the requested writ because she had an adequate remedy at law through an appeal of the BWC's May 4, 2012 order, we adopt that portion of the magistrate's conclusions of law as our own.

{¶ 5} However, as the magistrate determined that relator had an adequate remedy at law, the magistrate's further conclusion that the commission did not abuse its discretion in refusing to exercise its continuing jurisdiction amounts to an advisory opinion. As this court is loath to issue an advisory opinion, we do not adopt the magistrate's conclusions of law finding that the commission did not abuse its discretion. *See Harper v. Lefkowitz*, 10th Dist. No. 09AP-1090, 2010-Ohio-6527, ¶ 35 (noting that this court "is loathe to" issue an "advisory opinion"); *N. Canton v. Hutchinson*, 75 Ohio St.3d 112, 114 (1996) (noting that "[i]t is, of course, well settled that this court will not indulge in advisory opinions"); *State ex rel. Louthan v. Akron*, 9th Dist. No. 23351, 2007-Ohio-241, ¶ 8.

{¶ 6} Because relator had an adequate remedy at law, and in accordance with the magistrate's recommendation, we deny the requested writ of mandamus.

*Writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

———————————

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Cheryl L. Lawson, | : | |
| Relator, | : | |
| v. | : | No. 13AP-834 |
| Industrial Commission of Ohio and Allen Metropolitan Housing Authority, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on March 27, 2014

*Larrimer and Larrimer,* and *Thomas L. Reitz,* for relator.

*Michael DeWine*, Attorney General, and *Lisa R. Miller*, for respondent Industrial Commission of Ohio.

## IN MANDAMUS

{¶ 7} Relator, Cheryl L. Lawson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order wherein the commission denied her request to exercise its continuing jurisdiction and ordering the commission to do so.

Findings of Fact:

{¶ 8} 1. Relator was an employee of respondent Allen Metropolitan Housing Authority ("AMHA").

{¶ 9} 2. According to the stipulation of evidence, relator was working as a receptionist at AMHA on March 27, 2012. AMHA was being investigated by the Ohio

Ethics Commission based upon an anonymous tip that staff members of AMHA were destroying documents.

{¶ 10} 3. On March 27, 2012, officers from the Lima Police Department arrived at AMHA and demanded access to the building. Relator refused to unlock the door and allow the officers access.

{¶ 11} 4. A co-worker opened the door and, after the officers entered, relator was handcuffed and arrested for refusing to allow the officers access.

{¶ 12} 5. On April 5, 2012, relator filed a First Report of an Injury, Occupational Disease or Death ("FROI-1") form alleging that she sustained cervical and thoracic injuries when she was arrested. Specifically, relator alleged her injuries occurred as follows:

> Police shoved me up again[s]t the wall to handcuff me and put arms up high. Employer told them to be careful[.] I have problems.

{¶ 13} 6. Relator's supervisor Anna M. Schnippel certified the validity of relator's claim.

{¶ 14} 7. On April 10, 2012, the Special Investigation Department ("SID") of the Ohio Bureau of Workers' Compensation ("BWC") received an allegation from an anonymous source informing them that relator had been encouraged by a director and assistant director of her department to file a claim with the BWC regarding an injury she allegedly sustained while being arrested at work on March 27, 2012.

{¶ 15} 8. Based upon this allegation, the matter was investigated.

{¶ 16} 9. Three individuals witnessed relator's arrest, Sergeant Charles Godfrey, and two employees of AMHA, Bruce Hilty and Tiffany Elchert. While relator asserted that she had been shoved up against a wall and her arms had been placed high above her head while she was arrested, these witnesses gave a different account. According to the final SID report dated May 29, 2012, Sergeant Godfrey described relator's arrest as follows:

> On Tuesday, March 27, 2012, officers received information suspects of an ongoing criminal investigation involving employees of MET Housing in Lima, Allen County, Ohio may have destroyed evidence and may be in the process of destroying additional evidence at their office at 600 S. Main Street, Lima, Allen County, Ohio. At approximately 1355

hours, Inv. Johnson, Inv. Jack Miller, Special Agent Gary Miller and I (Sgt. Godfrey) went to MET Housing to secure the scene until a search warrant was obtained. We walked into the lobby, identified ourselves and asked the receptionist, Cheryl Lawson, to let us in. There is a secured door between the lobby and the offices. The receptionist has to push a button to electrically unlock the door. Ms. Lawson didn't comply after being asked and told to do so several times. She was told she would be arrested if she didn't let us in. She still didn't comply and was told she was under arrest. A third party opened the door and we entered the office area. There is a hallway which connects this door to the receptionist's office. I immediately walked towards the receptionist's office. Ms. Lawson was already in the hallway and met me about halfway. Without being instructed, she turned around and put her hands behind her back. I put the handcuffs on her without incident. I placed a hand on her upper arm and placed my other hand on her upper back and guided her towards a wall so the other officers could walk around us. She did not resist and walked up to the wall so she was facing it. There was no use of force against her. She did not complain about being injured from this arrest.

Ms. Lawson was transported to the Lima Police Department and released on an unsecured appearance bond. She returned to MET Housing about an hour or so after being arrested and was let in to retrieve her belongings. She sat in the conference room with some of the other employees and talked with them. I was in the conference room during part of this time. I heard her and Anna Schnippel (her boss) talking. Ms. Lawson told Ms. Schnippel she would do it again for her again [sic] if put in the position again. At no time did I hear Ms. Lawson complain of being injured from being arrested.

Hilty described relator's arrest as follows:

Hilty informed that he was the one who actually let Sergeant Godfrey (Sgt. Godfrey) into the building. Hilty recalled that the time was approximately 1:45 pm on March 27, 2012 * * *.

Hilty informed that when Sgt. Godfrey walked in he told LAWSON she was under arrest and told LAWSON to put her hands behind her back. Hilty recalled that LAWSON said something like "you're the boss". According to Hilty, LAWSON then put her hands behind her back and Sgt. Lawson [sic] put the handcuffs on her. Hilty stated there was

no resistance and LAWSON was facing a cloth wall when she was arrested. Hilty informed that Schnippel was behind the wall and the Assistant Director, Tiffany Wright (Wright), was behind him. When asked, Hilty advised he was probably standing about five (5) feet away from LAWSON when she was arrested. Hilty also informed that LAWSON did not say anything further but Schnippel and Wright both asked if LAWSON'[s] arrest was necessary. Hilty recalled that Sgt. Godfrey explained that he had given LAWSON several warnings.

After LAWSON was handcuffed, Hilty related that everyone was moved to the conference room while the police secured the office. * * * Hilty related that when Officer TR Rader (Officer Rader) arrived to transport LAWSON, he recalled Sgt. Godfrey tell Officer Rader that LAWSON's handcuffs needed to be tightened because they were loose.

Elchert gave the following account:

Elchert reported that she witnessed LAWSON's arrest first hand and indicated that LAWSON met the arresting officer by the cloth wall that was also part of the pod/office walls and that the arresting officer told LAWSON she was under arrest and indicated to her that she had been told three times to open the door to let them into the back office. Elchert stated that LAWSON put her hands behind her back and the arresting officer placed the handcuffs on LAWSON. Elchert stated at no time was LAWSON pushed or shoved into the wall. Elchert advised that LAWSON stood by the wall for a brief period before being led into the conference room with the other employees. Elchert stated LAWSON was seated on a couch and then confirmed that Lefik asked LAWSON if she needed a chair to sit in instead of the couch and LAWSON stated she did. Elchert stated that LAWSON was seated in the conference room on the couch or in the chair for approximately fifteen to twenty minutes. Elchert further advised that another officer from the Lima Police Department came to transport LAWSON and when he arrived the arresting officer told the transporting officer that he had to wait as he never tightened the handcuffs when he placed them on LAWSON. Elchert stated that the transporting officer then tightened the handcuffs.

{¶ 17} Officer T.R. Rader, the officer who transported relator after her arrest, made the following statement:

Officer Rader informed that he only transported LAWSON from the site to the police station and booked LAWSON. Officer Rader advised that LAWSON was already in custody and handcuffed when he arrived. SA Young showed Officer Rader a photo, which he identified as LAWSON. Officer Rader was asked if he heard LAWSON complain about any type of injury. Officer Rader informed that LAWSON did not complain of any pain or injury. Officer Rader advised that LAWSON was released within a half an hour on a signature bond. Officer Rader confirmed that LAWSON was never taken to the Sheriff's jail. Officer Rader informed that after LAWSON was released, she walked approximately six (6) blocks back to the office.

{¶ 18} 10. Relator gave the following account of her arrest:

LAWSON stated that the law enforcement officers, "busted in the door", and threw her against the wall and arrested her for obstructing. LAWSON confirmed that she had been warned that she would be arrested since she had not allowed the law enforcement officers into the back office. LAWSON stated that they placed hand cuffs on her and indicated that the hand cuffs were placed, "up high". SA Young asked LAWSON to describe how high her hands and/or arms were placed on her back and she was unable to explain. SA Young then stood up and placed his hands behind his back in an effort to determine how high LAWSON's hands and/or arms were up her back when she was placed in hand cuffs. It was determined and agreed upon by LAWSON that her hands and/or arms were positioned between her waist line and the middle of her back. LAWSON stated that the hand cuffs were hurting and pulling her arms and shoulders and estimated that they were on for approximately one (1) hour. LAWSON stated the hand cuffs were not loose while they were on her. LAWSON stated she was later taken to the conference room with the other employees and indicated that she was initially seated on a low couch. LAWSON reported that sitting on the couch with the hand cuffs on was uncomfortable and advised that another employee provided her with an office chair to sit in for the remainder of her time in the conference room and prior to being transported to the Lima Police Department.

{¶ 19} Relator's supervisor Anna Schnippel gave a similar account:

Schnippel was later asked to show SA Young and FA Stein which wall LAWSON had been thrown into and Schnippel

walked SA Young and FA Stein to the area and indicated that LAWSON had been thrown into a portion of the wall that was between a doorway that led from the back office into the lobby and another doorway that led from the back office and into their conference room. SA Young noted that there were three pictures/plaques hanging on that portion of the wall and asked Schnippel if any of them fell to the ground when LAWSON was shoved into the wall. Schnippel initially indicated they did not fall to the ground and then seemed confused and unable to remember whether or not any of the pictures/plaques fell to the ground. Schnippel stated that LAWSON indicated that her neck hurt because of the way the hand cuffs were placed on her and also because she was sitting forward on a low couch.

{¶ 20} 11. Relator's application seeking to participate in the Ohio Workers' Compensation fund for injuries she allegedly received on March 27, 2012 was denied by order of the BWC mailed May 4, 2012. In denying her the right to participate, the BWC order provides:

An application for workers' compensation benefits was filed 04/09/2012 on behalf of the injured worker requesting the allowance of this claim for the following injury descriptions:

[P]olice shoved me up against the wall to handcuff me and put arms up high[.] [E]mployer told them to be careful[.] I have problems.

The claim is DISALLOWED for the following medical condition (s):

Code   Description                 Body Location      Part of Body

847.0  Sprain of neck
847.1  Sprain thoracic region
845.0  Sprain lumbosacral

There is no medical relationship between the diagnosed condition and the described injury/occupational disease.

BWC has conflicting evidence on file.

This decision is based on:

[I]nformation obtained by the Region 3 Special Investigation Unit (SIU) determined that there was conflicting injury descriptions. Information obtained from the injured worker indicates there was no new injury and that the incident aggravated a pre-existing and degenerative medical condition.

The order also informed relator that she had 14 days to appeal this order:

Ohio law requires that BWC allow the injured worker or employer 14 days from the receipt of this order to file an appeal. If the injured worker and employer agree with this decision, the 14 day appeal period may be waived. Both parties may submit a signed waiver of appeal to BWC. The Request for Waiver of Appeal (C108) is available through your local customer service office. Or you can log on to www.ohiobwc.com, select Injured [W]orker, then click on Forms.

If the injured worker or the employer disagrees with this decision, either may file an appeal within 14 days of receipt of this order. Appeals are filed with the Industrial Commission of Ohio (IC), either via the Internet at www.ohioic.com or at the following IC office * * *.

{¶ 21} 12. Relator did not appeal from the BWC order mailed May 4, 2012 which denied her application seeking to participate in the workers' compensation fund.

{¶ 22} 13. Instead, on January 22, 2013, relator filed a motion asking the commission to exercise its continuing jurisdiction:

Now comes [relator], by and through her attorney, as well as the employer, requesting that the Industrial Commission invoke continuing jurisdiction to vacate the BWC order dated May 4, 2012, which disallowed this claim in its entirety.

[Relator] asserts that the order creates both significant mistakes of fact and law that necessitate it being vacated so that the matter can be referred back to the BWC for an appropriate order.

{¶ 23} 14. The motion was heard before a district hearing officer ("DHO") on March 7, 2013. Relator's request was denied. The DHO noted that there was conflicting evidence in the record concerning the manner of relator's arrest and that the BWC had a

legitimate basis upon which to disallow relator's claim.  Furthermore, the DHO indicated that relator could have appealed from that denial within 14 days, but had failed to do so.

{¶ 24} 15.  Relator appealed and the matter was heard before a staff hearing officer ("SHO") on May 29, 2013.  The SHO noted that the BWC found that there was conflicting evidence on file and "[a]s such, the Bureau of Workers' Compensation order indication of conflicting methods of injury is not found to be a mistake of fact."  Apparently, counsel argued that there was fraud involved; however, the SHO disagreed, stating:

> There is no issue of fraud involved in the denial of the claim by the face of the Bureau of Workers' Compensation order, so there is no mistake of law regarding fraud. The Injured Worker's counsel also argued that the Bureau of Workers' Compensation indicating there was no medical relationship between the diagnosed condition and the injury results in a legally flawed order and the tenets of Greene v. Conrad (Aug. 21, 1997), Franklin App. No. 96ADE12-1780, applies. This argument is not found persuasive. Pursuant to Greene, a claimant must satisfy the following requirements for and [sic] adjudicator to hear the merits of a subsequent claim application, when the original application was denied by the BWC: (1) the BWC denied the initial claim because the claimant did not provide all of the information requested by the BWC to establish a claim; (2) the employee did not file an appeal of the BWC order denying the original claim; and (3) a second claim application is filed for the same incident or accident. Marinkovic v. Diversified Inventory Solution, Inc., 147 Ohio App.3d 497, 2002-Ohio-453, 771 N.E.2d 291; see also Bureau of Workers' Compensation's CST Advisory 31-3; ICR 98-1-02. In these situations, the first Bureau order is not deemed to be an order on the merits. In Chiple v. Acme Arsena Co., Inc., 2006-Ohio-5029 the court found, "The BWC's order was clearly a 'decision on the merits.' The BWC denied Chiple's claim based on its analysis of his medical documentation and its own rules and guidelines. Chiple fails to show that the BWC had insufficient evidence to determine he established a claim or that there was not sufficient medical evidence on which the Bureau could render a decision." In the current matter the Bureau of Workers' Compensation based its decision on the conflicting methods of injury and Injured Worker's statement to the Special Investigation Unit investigators. Further, there was medical on file and the decision was noted to be based on conflicting information on file. Ms. Lawson fails to show that the BWC had insufficient evidence to determine she established a

claim or that there was not sufficient medical evidence on which the Bureau could render a decision. As such, this Staff Hearing Officer does not find any mistake of law or fact. Further, Greene is not found to apply.

{¶ 25} In the final analysis, the SHO indicated that the parties could have appealed, but did not. As such, the SHO found that the parties could not use a motion for continuing jurisdiction as a substitute for an appeal:

> If the Employer or Injured Worker disagreed with the Bureau's interpretation of evidence they should have appealed the order within the fourteen-day appeal period. As they did not do so, they cannot instead request continuing jurisdiction as an alternative to an appeal. " *** A motion asking the commission to exercise its continuing jurisdiction is not a substitute for an appeal when a party had the opportunity to appeal." State ex rel. Boskovic Gen. Contrs. v. Indus. Comm., 2010-Ohio-2557, (Ohio Ct. App. June 8, 2010) cause dismissed, 2011-Ohio-5604, 130 Ohio St. 3d 1413, 956 N.E.2d 306 (2011).

{¶ 26} 16. Relator's appeal was refused by order of the commission mailed June 22, 2013.

{¶ 27} 17. Relator's further request for reconsideration was denied by order mailed July 27, 2013.

{¶ 28} 18. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 29} Because relator had an adequate remedy at law, the magistrate finds that the commission did not abuse its discretion when it denied relator's motion asking the commission to exercise its continuing jurisdiction.

{¶ 30} R.C. 4123.511 provides:

> (B)(1) Except as provided in division (B)(2) of this section, in claims other than those in which the employer is a self-insuring employer, if the administrator determines under division (A) of this section that a claimant is or is not entitled to an award of compensation or benefits, the administrator shall issue an order no later than twenty-eight days after the sending of the notice under division (A) of this section, granting or denying the payment of the compensation or benefits, or both as is appropriate to the claimant. * * * The administrator shall notify the claimant and the employer of

> the claimant and their respective representatives in writing of the nature of the order and the amounts of compensation and benefit payments involved. <u>The employer or claimant may appeal the order pursuant to division (C) of this section within fourteen days after the date of the receipt of the order.</u> The employer and claimant may waive, in writing, their rights to an appeal under this division.

(Emphasis added.)

{¶ 31} The BWC order denying the allowance of relator's claim was mailed May 4, 2012. That order specifically informed relator that she had 14 days to appeal. Relator did not file a timely appeal. Relator is barred from appealing the order and is precluded from contesting the merits of her right to participate in the workers' compensation system. R.C. 4123.511. *See also State ex rel. McCullough v. Indus. Comm. of Ohio,* 94 Ohio St.3d 156 (2002).

{¶ 32} In *State ex rel. Boskovic Gen. Contrs. v. Indus. Comm.,* 10th Dist. No. 09AP-711, 2010-Ohio-2557, this court considered a mandamus case in which Boskovic General Contractors ("Boskovic") asked the commission to exercise its continuing jurisdiction, contending that it was not the employer of the claimant in the allowed claim. After noting that Boskovic had received a copy of the order naming it as the employer in the claim and noting that Boskovic did not file an appeal from that order, this court stated:

> Mandamus will not issue when there is a plain and adequate remedy in the ordinary course of the law. R.C. 2731.05. Here, relator seeks to challenge the June 12, 2007 order that found relator to be claimant's employer at the time he was injured. When this determination was made, relator had available to it an adequate remedy at law by way of filing a timely appeal of the June 12, 2007 order, but relator did not file such an appeal. A failure to pursue an adequate administrative remedy bars mandamus relief. *State ex rel. Buckley v. Indus. Comm.,* 100 Ohio St.3d 68, 796 N.E.2d 522, 2003-Ohio-5072, citing *State ex rel. Reeves v. Indus. Comm.* (1990), 53 Ohio St.3d 212, 559 N.E.2d 1311.

*Id.* at ¶ 6.

{¶ 33} This is a right-to-participate case and not an extent of disability case. Relator could have appealed the denial of her claim to the commission and, in the event

she lost before the commission, relator could have appealed the decision to a common pleas court. *See* R.C. 4123.512. Relator had an adequate remedy which she did not pursue and, as such, her request for mandamus relief should be denied.

{¶ 34} Although it is unnecessary to discuss relator's argument that the commission abused its discretion when it refused to exercise its continuing jurisdiction, because relator has raised it, the magistrate will, nevertheless, address that issue.

{¶ 35} Pursuant to R.C. 4123.52, "The jurisdiction of the industrial commission and the authority of the administrator of workers' compensation over each case is continuing, and the commission may make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion is justified." In *State ex rel. B & C Machine Co. v. Indus. Comm.*, 65 Ohio St.3d 538, 541-42 (1992), the court examined the judicially-carved circumstances under which continuing jurisdiction may be exercised, and stated as follows:

> R.C. 4123.52 contains a broad grant of authority. However, we are aware that the commission's continuing jurisdiction is not unlimited. See, *e.g., State ex rel. Gatlin v. Yellow Freight System, Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487 (commission has inherent power to reconsider its order for a reasonable period of time absent statutory or administrative restrictions); *State ex rel. Cuyahoga Hts. Bd. of Edn. v. Johnston* (1979), 58 Ohio St.2d 132, 12 O.O.3d 128, 388 N.E.2d 1383 (just cause for modification of a prior order includes new and changed conditions); *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149 (continuing jurisdiction exists when prior order is clearly a mistake of fact); *State ex rel. Kilgore v. Indus. Comm.* (1930), 123 Ohio St. 164, 9 Ohio Law Abs. 62, 174 N.E. 345 (commission has continuing jurisdiction in cases involving fraud); *State ex rel. Manns v. Indus. Comm.* (1988), 39 Ohio St.3d 188, 529 N.E.2d 1379 (an error by an inferior tribunal is a sufficient reason to invoke continuing jurisdiction); and *State ex rel. Saunders v. Metal Container Corp.* (1990), 52 Ohio St.3d 85, 86, 556 N.E.2d 168, 170 (mistake must be "sufficient to invoke the continuing jurisdiction provisions of R.C. 4123.52"). Today, we expand the list set forth above and hold that the Industrial Commission has the authority pursuant to R.C. 4123.52 to modify a prior order that is clearly a mistake of law.

{¶ 36} Relator alleged that the BWC order disallowing her claim contained mistakes of law and fact. Relator asserts that the BWC incorrectly stated that "[t]here is no medical relationship between the diagnosed condition and the described injury/occupational disease." However, relator is taking one sentence completely out of context.

{¶ 37} As noted in the findings of fact, the BWC order mailed May 4, 2012 provides:

> An application for workers' compensation benefits was filed 04/09/2012 on behalf of the injured worker requesting the allowance of this claim for the following injury descriptions:
>
> [P]olice shoved me up against the wall to handcuff me and put arms up high[.] [E]mployer told them to be careful[,] I have problems.
>
> The claim is DISALLOWED for the following medical condition (s) :
>
> 847.0  Sprain of neck
> 847.1  Sprain thoracic region
> 845.0  Sprain lumbosacral
>
> <u>There is no medical relationship between the diagnosed condition and the described injury/occupational disease.</u>
>
> BWC has conflicting evidence on file.
>
> This decision is based on:
>
> [I]nformation obtained by the Region 3 Special Investigation Unit [SID] determined that there was conflicting injury descriptions. Information obtained from the injured worker indicates there was no new injury and that the incident aggravated a pre-existing and degenerative medical condition.

(Emphasis added.)

{¶ 38} As is clear from the order, the BWC indicated that there was conflicting evidence on file and that review of the SID report indicated that there was conflicting

descriptions as to the events which relator asserted caused her injuries. Further, the BWC also found that there was conflicting evidence as to whether or not the incident aggravated a pre-existing and degenerative medical condition. The commission concluded that the evidence was insufficient to support a medical relationship between the diagnosed condition and the description of how the alleged injuries occurred.

{¶ 39} Relator goes no further in explaining why she believes the BWC's order contains clear mistakes of law and fact except to say that relator was threatened not to pursue an appeal and that, on these grounds, the commission should have exercised its continuing jurisdiction. However, aside from counsel's arguments, there is no evidence in the record to support this argument. A review of that order demonstrates that the commission did not abuse its discretion in finding that relator had not met one of the prerequisites necessary before the commission could exercise its continuing jurisdiction over her claim.

{¶ 40} Finding that relator had an adequate remedy at law which she did not pursue and finding that relator has not otherwise demonstrated that the commission abused its discretion when it denied her application asking it to exercise continuing jurisdiction, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA BROOKS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).